6 N.Y.2d 383 (1959)
In the Matter of Cosmopolitan Mutual Casualty Company of New York, Respondent,
v.
Monarch Concrete Corporation et al., Judgment Debtors; Psaty & Fuhrman, Inc., Third-Party Appellant, and Hyman Greenberg, Individually and as Secretary of Psaty & Fuhrman, Inc., Appellant.
Court of Appeals of the State of New York.
Argued April 8, 1959.
Decided July 8, 1959.
David Morgulas for third-party appellant.
Seymour Karpas, Marcus Scherl and Herman D. Bragin for respondent.
Judges FULD, FROESSEL and BURKE concur with Judge VAN VOORHIS; Judge DESMOND dissents in an opinion in which Chief Judge CONWAY and Judge DYE concur.
*386 VAN VOORHIS, J.
The appeal is by a third party in a supplementary proceeding (Psaty & Fuhrman, Inc.) from an affirmance of a civil contempt adjudication. A subpna had been served on Psaty by the judgment creditor under section 781 of the Civil Practice Act containing a clause forbidding Psaty "to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the judgment debtor, or to which he may be entitled or which may thereafter be acquired by or become due to said judgment debtor, or to pay over or otherwise dispose of any moneys due or to become due to such judgment debtor, not exempt by law from application to the satisfaction of the judgment, until the further order of the court".
Psaty was the general contractor in the construction of an incinerator for the City of New York. The judgment debtor, Monarch Concrete Corporation, was a subcontractor. It has been found that Psaty paid money to Monarch in violation of the injunction clause in the subpna, in consequence whereof Psaty has been fined $4,083.69 and interest with which to pay the indebtedness of the judgment debtor to the judgment creditor.
In lieu of an appearance at Special Term, Part II, Psaty submitted an affidavit, verified June 27, 1956, stating that the judgment debtor had been overpaid on its subcontract, and that there was nothing owing to the judgment debtor when the *387 additional payments were made which have been held to constitute a violation of the injunctive clause in the third-party subpna. This affidavit was accepted in lieu of testimony in the summary proceeding nor has its accuracy been questioned.
What gave rise to this controversy is that in January, 1956 Monarch (the judgment debtor) declared that it could not fulfill its obligations under its subcontract with Psaty. By the date of service of the third-party subpna, all of the contract price and extras had been paid without the retention of any reserve percentage, and a considerable sum in addition. Although nothing was owing from Psaty to Monarch, Psaty continued paying money to Monarch after it had been served with this subpna. It is these latter payments which have been held to subject Psaty to penalties for contempt of court.
The reason for the overpayments by Psaty was that it had to finish the work which it had contracted to perform under its contract with the City of New York (part of which had been sublet to Monarch) and, rather than to discharge Monarch and finish the job itself or engage another subcontractor to complete the work, it elected to subsidize Monarch to do so itself. It does not matter whether these funds advanced to Monarch by Psaty to pay laborers, materialmen, insurance and other necessary expenses became trust funds, or were loans or gifts. In no event did they represent "property belonging to the judgment-debtor" nor indebtedness, which was all that the subpna enjoined Psaty from paying or transferring to Monarch.
Psaty derived an advantage from this course of conduct, but that did not transform the money paid to Monarch into payment of indebtedness to Monarch or into property of Monarch in Psaty's hands. The Appellate Division stated that "It is a reasonable inference that the course undertaken by Psaty was to its advantage as compared with the other means available to it", but that did not render Psaty guilty of contempt. The advantage was to enable Psaty to complete its general contract with the city so as to collect the balance of its contract price from the city. The circumstance that Psaty had to complete its contract on account of Monarch's default, and took this means of doing so, did not mean that it was indebted to Monarch. The indebtedness was overwhelmingly the other way. If Psaty *388 had severed its relations with Monarch, it could have taken judgment against Monarch for nearly $100,000 plus whatever additional extra cost it would have been obliged to incur in order to complete the work which Monarch had subcontracted but neglected to perform.
It has been held that on proof that these payments were made to or for Monarch's account, the burden was cast on Psaty to establish that they were not funds due or to become due to Monarch. The difficulty in adhering to that ruling is, in the first place, that there is no presumption that these moneys belonged to Monarch or that Psaty committed a contempt. It was incumbent on the judgment creditor to establish through examination in the supplementary proceeding not only that these funds were paid to Monarch, but also that they were its property or were transferred in payment of an indebtedness so as to constitute a violation of the injunctive clause in the subpna. Moreover, if there were any burden on Psaty, it was sustained by the filing of the affidavit of its secretary (accepted in lieu of testimony) showing that Monarch had already been overpaid. Even so, the situation might have been different if under a new arrangement with Monarch it were to have derived a profit for the completion of this work, but Monarch was not completing the job for a profit. By receiving these moneys from Psaty, which were not enough even to meet the unemployment and social security and wage obligations of Monarch, Monarch made no profit but was induced to continue so as to avoid the heavy judgment which would have been entered against it if Psaty had been obliged to complete the subcontracted work itself or through some other subcontractor. In that event there would have been less for other creditors of Monarch. Instead of depleting Monarch's assets available for creditors, Psaty was reducing Monarch's liabilities. Under these circumstances, there was no violation of the subpna, as matter of law, inasmuch as no property belonging to the judgment debtor was transferred to it, nor was any indebtedness paid to the judgment debtor.
The order appealed from should be reversed insofar as it adjudicates appellant in contempt of the third-party subpna, the fine remitted and the motion to punish the appellant for contempt denied, with costs in all courts.
*389 DESMOND, J. (dissenting).
We are, of course, not examining into the motives or purposes of the "Third Party" (Psaty & Fuhrman, Inc., herein called "Psaty") nor are we determining whether what Psaty did was for the benefit of the general situation and for the purpose of getting the job finished. The single narrow issue is: did Psaty violate the injunction contained in the third-party subpna (Civ. Prac. Act, § 781) served on it on June 11, 1956? The Referee and Special Term and the Appellate Division all answered "yes" to that question. Unless we can say that there is no evidentiary basis at all for that finding of fact we, limited in jurisdiction as we are, must affirm the contempt adjudication.
The injunctive clause of the subpna served on Psaty ordered Psaty not to "pay over or otherwise dispose of any moneys due or to become due to" Monarch Concrete Corporation, which was the judgment debtor of respondent Cosmopolitan Mutual Insurance Company. After and despite the service of that writ on June 11, 1956, Psaty paid direct to Monarch about $41,000 (an amount far in excess of Cosmopolitan's judgment against Monarch) and paid to Monarch's suppliers about $16,000. The Referee, affirmed by Special Term and the Appellate Division, has found as fact that these payments were not loans or trust fund dispositions but were the property of debtor Monarch when paid by Psaty, and that, accordingly, they violated the injunction. Unless this finding was wrong, absolutely and as matter of law, we cannot reverse it. The record does not permit such a reversal.
Proof of the payments by Psaty to Monarch and to the latter's creditors after June 11, 1956 established, prima facie, violations of the injunction. The explanations offered by Psaty fail to overcome this showing  indeed, they confirm it. We will assume that Monarch had, prior to January 10, 1956, been overpaid by Psaty on the former's performance of its subcontract with the latter and that the subcontract was still in part unperformed. But, regardless of that, the payments made to Monarch by Psaty after the service of the injunction were, as the voucher notations themselves said: "pursuant to your letter dated 1/10/56." By that January 10, 1956 letter Monarch had agreed to continue performance of its subcontract on condition that Psaty advance moneys for Monarch's payrolls and pay Monarch's *390 bills and charge all such amounts "against the payments, if any, which might otherwise become due to" Monarch "in the ordinary course." Monarch continued the work, Psaty made the payments. How can it be said that as matter of law such payments made after the injunction date were not "moneys due or to become due" to Monarch?
As the Appellate Division pointed out, Psaty could have moved the court to modify or vacate the injunction or could have sought judgment creditor Cosmopolitan's consent to the payments. Instead, Psaty by choice failed to inform Cosmopolitan of the payments or of the agreement under which they were being made. To quote the Appellate Division majority: "A party who cavalierly chooses to ignore an injunctive order, regular on its face, must accept the consequences if the order is sustained".
The order appealed from should be affirmed, with costs.
Order reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.